# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **19-05230-jw**
Adversary Proceeding Number: **19-80090-jw**

### ORDER ON MOTION TO DISMISS

The relief set forth on the following pages, for a total of 10 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**02/13/2020**



*[signature]*

US Bankruptcy Judge
District of South Carolina

Entered: 02/13/2020

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Richard Michael Waters and Robin Louise Waters,<br><br>　　　　　　　　　　　　　　Debtor(s). | C/A No. 19-05230-JW<br><br>Adv. Pro. No. 19-80090-JW |
| Robin Louise Waters,<br><br>　　　　　　　　　　　　　　Plaintiff(s),<br><br>v.<br><br>McCleod Loris Seacoast Hospital, doing business as McCleod Health,<br><br>　　　　　　　　　　　　　　Defendant(s). | Chapter 13<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS** |

　　　　This matter comes before the Court on the Motion to Dismiss filed by Defendant McCleod Loris Seacoast Hospital, doing business as McCleod Health ("Defendant"). Plaintiff Robin Louise Waters ("Plaintiff") filed an Objection to the Motion. After reviewing the record and considering the arguments of counsel at the hearing, the Court grants the Motion to Dismiss in part and denies it in part. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following findings of fact and conclusions of law.[1]

**FINDINGS OF FACT**

　　　　1.　　Plaintiff, together with her husband, Richard Michael Waters, filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on October 4, 2019, C/A No. 19-05230. Notice of the bankruptcy filing was provided by mail to Plaintiff's creditors, including Defendant

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and vice versa.

at the following addresses: McCleod Gastoenterology Seacoast c/o Receivable Solutions 1325 Garner Lane, Suite C, Columbia, SC 29210; McCloud Digestive Health Center Seacoast, PO Box 3239, Florence SC 29502; McCloud Health, PO Box 603936, Charlotte NC 28260; and McCloud Loris Seacoast Hospital, 3655 Mitchel Street, Loris SC 29569.

2. On or about October 22, 2019, Defendant sent an invoice to Plaintiff seeking payment in the amount of $6,065.00 for medical services provided to Plaintiff on January 16, 2019 ("First Letter").

3. On November 4, 2019, Plaintiff filed a Complaint asserting the following causes of action: (1) willful violation of the automatic stay seeking actual and punitive damages under 11 U.S.C. § 362(k);[2] (2) negligence; and (3) violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 ("SCUTPA"). According to an affidavit of service, the Complaint was served on Defendant's registered agent on November 7, 2019.

4. On or about November 13, 2019, Receivable Solutions, Inc., a collection agency acting on behalf of Defendant, sent a more formal second collection letter ("Second Letter") to Plaintiff demanding payment in the amount of $6,065 for medical services provided to Plaintiff on January 16, 2019. The Second Letter states that it "is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose."

5. On December 5, 2019, counsel for the Plaintiff and Defendant agreed to an extension of time for Defendant to respond to the Complaint.

6. After receiving the Second Letter, Plaintiff filed an Amended Complaint on December 6, 2019 to include additional grounds for relief under the same three causes of action

---

[2] Further references to the Bankruptcy Code (11 U.S.C. § 101, *et al.*) shall be by section number only.

based upon Defendant's conduct in sending the Second Letter. Plaintiff attached copies of both the First Letter and Second Letter to the Amended Complaint.

7. On December 20, 2019, Defendant filed the Motion to Dismiss.

8. On January 27, 2020, Plaintiff filed her Objection and Memorandum in Opposition to Defendant's Motion to Dismiss.

9. The parties filed a Joint Statement of Dispute on January 31, 2020, wherein the parties consented to this Court entering final orders and judgments in this proceeding.

## CONCLUSIONS OF LAW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, an action may be dismissed if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the Court examines the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses.... [The Court's] inquiry then is limited to whether the allegations constitute a short and plain statement of the claim showing that the pleader is entitled to relief." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). To survive a motion to dismiss, the complaint must provide enough facts to " 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); see also *Fed. R. Civ. Pro.* 8(a)(2). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court "must take the allegations as true, no matter how skeptical the court may be," and proceed "on the

3

assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007) (internal citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations.").

In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider matters of public record and documents attached to the Complaint and motion to dismiss "so long as they are integral to the complaint and authentic." *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The Court may also consider any affirmative defenses raised by a movant if the factual requirements of the defense appear on the face of the plaintiff's complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (holding that affirmative defenses raised by way of a Rule 12(b)(6) motion may be reached if all the facts necessary to rule and prove the affirmative defense appear on the face of the complaint).

## I.    Positions of the Parties

Defendant's Motion to Dismiss asserts that Plaintiff's claim for punitive damages under the First Cause of Action (Willful Violation of the Automatic Stay) should be dismissed because there are no allegations of egregious conduct sufficient to support a claim for punitive damages. The Motion further asserts that Plaintiff's Second and Third Causes of Action (Negligence and SCUTPA) should be dismissed because they are preempted by federal bankruptcy law since these causes of action are no more than attempts to assert claims for violation of the automatic stay under state law theories.

## II.   Preemption

The Court will first address Defendant's assertion that Plaintiff's state law claims of Negligence and SCUTPA are preempted by the Bankruptcy Code. "The Supremacy Clause and

4

the doctrine of preemption invalidate state statutes to the extent they are inconsistent with or contrary to the purposes or objectives of federal law." *Sheehan v. Peveich,* 574 F.3d 248, 252 (4th Cir. 2009) (citing *Wisconsin Pub. Intervenor v. Mortier,* 501 U.S. 597, 604 (1991)). Federal law may preempt state law in three ways: (1) federal law may expressly declare Congress' intent to preempt state law; (2) Congress can "occupy the field by regulating so pervasively that there is no room left for the states to supplement federal law; and (3) state law can be preempted "to the extent that it actually conflicts with federal law." *Id.*

In this case, Plaintiff's Negligence and SCUTPA causes of action are grounded upon events and allegations of misconduct that occurred during the bankruptcy case and are premised solely upon Defendant's alleged failure to perform obligations arising under the Bankruptcy Code and violations of specific provisions of the Code. In her Negligence cause of action, Plaintiff alleges that Defendant was negligent in "failing to properly and reasonably handle the … bankruptcy notice; … in failing to take adequate and reasonable measures so that collection letter and demand for payment would not occur against Plaintiff; … in engaging in conduct that violated the bankruptcy laws; …[and] in intentionally and knowingly harassing the Plaintiff by sending demands for payment collection letters after she had filed for bankruptcy." In her SCUTPA cause of action, Plaintiff alleges that Defendant "caused a collection letter and demand for payment of a stayed debt to be mailed and sent directly to her causing her damages." The Court must determine whether these state law claims are inconsistent with or contrary to the purpose or objectives of the Bankruptcy Code. *See id.* ("The Supremacy Clause and the doctrine of preemption invalidate state statutes to the extent they are inconsistent with or contrary to the purposes or objectives of federal law.")

5

While this Court has not previously addressed this issue, multiple courts in other jurisdictions have concluded that state law claims allowing debtor to collect damages for stay violations and other state law claims that implicate federal bankruptcy law are preempted by the Bankruptcy Code.[3] However, the Court also observes that simply because a plaintiff brings a state law claim in the context of a bankruptcy matter does not necessarily warrant preemption of those claims. This is particularly true where the underlying facts of the state law claim are not predicated upon a violation of the Code. Under these circumstances, courts have held that the state law claims are not preempted. *In re Waggett,* No. 09-4152-8-SWH, 2015 WL 1384087 (Bankr. E.D.N.C. Mar. 23, 2015) (denying motion to dismiss state law claims based on preemption when the claims "are premised on other grounds than just a violation of the discharge injunction, and are instead premised on allegations of continuous, negligent, deceptive and unlawful debt collection activities of the defendants which occurred" after a bankruptcy case was closed); *Dougherty v. Wells Fargo Home Loans, Inc.,* 425 F. Supp. 599, 609 (E.D. Pa. 2006) (holding that state law claims under the Pennsylvania's Unfair Trade Practices and Consumer Protection Law and Fair Credit Extension Uniformity Act did not presuppose violations of the Bankruptcy Code and thus were not preempted). In this case, the allegations of Plaintiff's Complaint are expressly predicated upon a

---

[3] *See Eastern Equipment & Serv. Corp. v. Factory Point Nat. Bank,* 236 F.3d 117, 120 (2d Cir. 2001) (concluding that preemption precludes state law damages claims for violating automatic stay provision of Bankruptcy Code because Congress created lengthy, complex and detailed Bankruptcy Code to achieve uniformity); *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417 (6th Cir. 2000) (dismissing state law unjust enrichment claim and claim for accounting because the claims presupposed a violation of the Bankruptcy Code and were thus preempted by federal bankruptcy law); *In re Larkin,* 553 B.R. 428 (Bankr. D. Kan. 2016) (finding that the Bankruptcy Code preempts claims for breach of contract and unfair and deceptive practices based upon a creditor's failure to comply with a loan modification provided for in the debtor's chapter 13 plan); *Kline v. Mortgage Elec. Sec. Sys.*, 2010 WL 3786584 (S.D. Ohio Sept. 28, 2010) (Bankruptcy Code preempted action under Ohio Consumer Sales Practices Act where cause of action was grounded on defendant's filing of proof of claim in pending bankruptcy case); *In re Williams*, 392 B.R. 882 (Bankr.M.D.Fla.2008) (Code preempts state law claims under Florida Consumer Collection Practices Act arising from wrongful conduct committed during course of bankruptcy case); *In re Johnston*, 362 B.R. 730 (Bankr. N.D. W.Va. 2007) (West Virginia Consumer Credit and Protection Act claim preempted by Bankruptcy Code where same activity is regulated by the Code); *In re Shape, Inc.,* 135 B.R. 707, 708-09 (Bankr. D. Me. 1992) (holding that section 362 of Bankruptcy Code preempted state unfair and deceptive business practice claim that was based solely on alleged violation of automatic stay).

violation of the automatic stay. Furthermore, the alleged misconduct, i.e., the mailing of collection letters to Plaintiff, would not be wrongful absent the existence of the automatic stay imposed by the Bankruptcy Code. The Bankruptcy Code provides a specific remedy for willful violations of the automatic stay—"actual damages, including costs and attorneys' fees, and in appropriate circumstances, … punitive damages." 11 U.S.C. § 362(k). "Permitting assertion of a host of state law causes of action to redress wrongs under the Bankruptcy Code would undermine the uniformity the Code endeavors to preserve and would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 426 (6th Cir. 2000).

Plaintiff argued that § 105 allows the Court to consider the negligence and SCUTPA claims to proceed, as it provides a sweeping grant of authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. However, "in exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions." *Law v. Siegel,* 571 U.S. 415, 421 (2014). To add additional remedies under state law for a stay violation would contravene 11 U.S.C. § 362(k), which limits the remedy for such violations to "actual damages, including costs and attorneys' fees, and, in appropriate circumstances… punitive damages" and would exceed the limits of its authority under § 105. *See id.* ("[Section] 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.")  Plaintiff was unable to identify any convincing authority supporting her contention that preemption would not apply.[4]  Accordingly, the Court finds

---

[4]  During the hearing and in her memorandum, Plaintiff cited *Butler v. Enhanced Equity Fund II, LP (In re Am. Ambulette & Ambulance Serv., Inc.)*, 560 B.R. 256 (Bankr. E.D.N.C. 2016) and *Gold v. Old Republic Nat'l Title Ins. Co. (In re Taneja),* No. 08-13293-SSM, 2010 WL 4882826 (Bankr. E.D. Va. Nov. 24, 2010) to support her argument that the state law claims would not be preempted.  These cases are inapposite as neither considered a federal preemption argument.  They also did not involve state law claims based upon a violation of the automatic stay.  In *American Ambulette,* the trustee was given the opportunity to amend the complaint to state a claim under the North Carolina Unfair and Deceptive Trade Practices act, but the conduct supporting that claim involved allegations that

7

Plaintiff's state law claims for negligence and SCUTPA are preempted by the Bankruptcy Code and should be dismissed.

### III. Punitive Damages for Willful Violation of the Automatic Stay

Defendant further argues that Plaintiff's claim for punitive damages for willful violation of the automatic stay should be dismissed because Plaintiff failed to allege egregious conduct sufficient to support a claim for punitive damages. "[A]n award of punitive damages is within the discretion of the Bankruptcy Court and is a fact specific determination." *Romero v. Coventry Credit Union (In re Romero),* Adv. Pro. No. 10-80051-HB, 2010 WL 4863781 (Bankr. D.S.C. Nov. 23, 2010) (quoting *In re Stewart*, C/A No. 08–15643–JNF, 2010 WL 1427378, at *6, slip op. (Bankr. D. Mass. April 9, 2010)); *see also Green Tree Servicing, LLC v. Taylor*, 369 B.R. 282 (S.D. W. Va. 2007) (discussing the different approaches various courts have taken to address punitive damages for an alleged violation of the automatic stay under § 362(k)).

As indicated by the Court at the hearing, the Court denies Defendant's request to dismiss pursuant to its Rule 12(b) motion as to the punitive damages portion of Plaintiff's cause of action for a violation of the automatic stay under § 362(k).

In her Amended Complaint, Plaintiff alleged that Defendant's conduct in sending two collection letters, the second from a collection agency sent exactly forty days after Plaintiff filed her chapter 13 case was "overly aggressive," "oppressive," "abusive," and "flagrant." The Second Letter was a demand for payment that was strictly worded and from a collection agency.

While Defendant's counsel argued that a simple phone call from Plaintiff's counsel would likely have stopped the collection efforts, the Court does not find such a requirement in   § 362(k).

---

defendants caused the debtor to transfer business assets to another entity through misrepresentation of the nature of the transaction. In *Taneja*, the plaintiff pled state law claims, including negligence, fraud and breach of contract, which ultimately survived a motion to dismiss, but the conduct serving as the basis for those claims did not involve a violation of the Bankruptcy Code.

8

To the contrary, the automatic stay is self-executing and there had been no allegations that Defendant did not timely receive Plaintiff's notice of bankruptcy case.

Furthermore, both of the cases cited by Defendants to dismiss the punitive damages element of the first cause of action, *Romero Coventry Credit Union* and *Green Tree Servicing, LLC v. Taylor*, were not determinations at the motion to dismiss stage, where the allegations in the complaint are deemed to be true, but determinations at later trial proceedings.[5] *See Romero,* 2010 WL 4863781 at *1 (dismissing a request for punitive damages at the Rule 56 summary judgment stage); *Green Tree*, 369 B.R. at 289–90 (upholding the bankruptcy court's denial of a request for punitive damages after the bankruptcy court held a trial on the matter).

Reviewing the Amended Complaint under the standards for a motion to dismiss under Ruel 12, and recognizing that there were multiple post-petition demands for payments, including one by a collection agency, Defendant's Motion to Dismiss as to Plaintiff's request for punitive damages as an element of her § 362(k) cause of action is denied.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss is granted as to Plaintiff's Negligence and SCUTPA claims and denied as to Plaintiff's claim for punitive damages under 11 U.S.C. § 362(k).

**AND IT IS SO ORDERED.**

---

[5] In *In re Grisard-Van Roey*, 373 B.R. 441, 445 (Bankr. D.S.C. 2007), the undersigned held that a punitive damages award was inappropriate where the stay violation was not the result of the creditor's intentional or egregious misconduct. However, like the bankruptcy court in *Green Tree*, this Court in *Grisard-Van Roey* made its determination to deny punitive damages after holding a trial on the merits in the matter. *See id.* at 444.